Good morning, Your Honors. I'd like to reserve six minutes, please, for rebuttal. That would be fine. Please identify yourself so we know who you are. Yes, Your Honor. My name is Lori Chess. I'm representing appellant and cross-appellee Autozone. Okay. Go ahead, Ms. Chess. Your Honor, as I mentioned, we're here on consolidated appeals, and I'd like to talk about Autozone's appeal first. Autozone is appealing the district court's error in not granting Autozone's judgment for a matter of law or a motion for new trial on the EEOC's hostile work environment claim. It is Autozone's position that a reasonable jury could not have legally sufficient evidence to find that Autozone did not meet its burden to prove the affirmative defense set forth in Burlington and Farragher. The other issue for Autozone's appeal is the district court's error in not granting Autozone's judgment of a matter of law or motion for new trial on the punitive damages issue. Didn't that question, though, turn as a matter of fact on the jury's resolution of significant contested evidence as to how effective Mr. Anderson's investigation was once the reports reached Autozone human relations? It's our position, Your Honor, that they, taking the undisputed facts that the jury got it wrong and that the judge got it wrong in not granting the judgment for a matter of law, because the undisputed facts were – well, let's go back to the first prong, that Autozone had the burden of proving that it exercised reasonable care to prevent and correct harassment. We don't believe there is any dispute as to what I would call part A of the – of that test. You had good policies and procedures. Good policies and procedures. The question, though, is whether they were adequately followed, and the district court said no, but as I read the briefing and the excerpts of record that I looked at, it appeared to me that there was significant dispute, for example, as to whether your investigator actually talked to people that he says he talked to, because they testified, no, the man never spoke to me. And let's talk about – again, especially for this Court's purposes, I just want to focus on what's undisputed. So let's talk about the undisputed facts, and it's our position that under Holley D. and Hartage and Burlington and Farragher that the undisputed facts are enough to satisfy that he acted – that he moved to correct the harassment. That once Ms. Wing finally complained to AutoZone and finally used the mechanisms that she testified she was well aware of from the date of her hire, it is undisputed that the person tasked with investigating, the regional human resource manager, Scott Anderson, came to meet with her within a few days of her calling, that he sat down with her for four and a half hours by her own testimony, took statements from her, that she told him – again, her testimony is that she couldn't give him one single witness to corroborate any of the harassment that she was telling him about. That's not surprising that she couldn't do it in June of 2003 when he met with her, because also at trial there was not one witness presented to testify that they saw any act of harassment. So how does that make it undisputed?  He met with her at the AutoZone store at which she worked. Private place? As private as they had, Your Honor. They had – The second meeting off-site. The second meeting was off-site. At that point, Your Honor, he had just witnessed through the video a very egregious act of harassment and wanted to get her out. Did she report it to the police? She did not, Your Honor. I'm asking if you did. Did AutoZone? No. And neither did Ms. Wing. She does? Well, because AutoZone's position was, again, she had not reported it, but once AutoZone received the information – They had the videotape. Correct. But – It was a criminal act, was it not? If you assume that she was offended by it – Well, yes, ma'am. Well, I mean, it is an offensive act, but she did not report it as an assault. There had been testimony from other individuals in the store regarding the relationship between Ms. Wing and the harassers. And he was not terminated, was he? He was forced to resign. He was not terminated, was he? He was not terminated, but under – So if I'm an employer looking to hire somebody with the experience that he has, all I would see was that he left without notice. Yes. Is that a code in the industry to tell you not to hire somebody because they're criminals? Again, you're – I'm not sure that I would agree that he'd be a criminal, especially given that Ms. Wing had no interest in reporting him. But what Mr. Anderson and Mr. Goddard had authority to do in order to get him removed immediately was to encourage him to resign, which is what they did. Neither – They also had the authority to fire him, did they not? Neither one of those gentlemen did. That would have to come from a regional manager. They could suspend him with or without pay. They could. And they gave him the choice of be suspended and then you'll be terminated or you can resign. And he chose to resign. And they got him – Does this remind you of some other institution that we've been reading about in the last five years? I'm sorry, Your Honor? You'll think about it. But they got him to resign. They got him out of the store as soon as possible, and she testified she never had to work with him again. Going back to what Mr. Anderson did initially, it's undisputed that he met with Ms. Wing. It's undisputed that he met with Mr. Contreras and reminded him of the sexual harassment policy, told him that his behavior needs to be appropriate, and told him that there is to be no retaliation against Ms. Wing. That's all. And I hear what Your Honor – What is the jury function in terms of determining credibility of Mr. Anderson? It is exclusively within their province. Do you think it may have had an impact that he interviewed somebody in 2003 who didn't work there until 2004? Mr. Corbiel actually testified that he worked there in June of 2003 with Ms. Wing and that he had never met Mr. Contreras. So Mr. Corbiel, I'm not sure if he was correct on his dates. And going back to Mr. – What about the guy who didn't speak English? That was a woman, Ms. Bracho, and there was just Ms. Wing's own opinion that there was no evidence from Ms. Bracho. It's our contention that Mr. Anderson said he spoke with a few people. Ms. Gomez-Hernandez and Mr. Barajas did testify they spoke with Mr. Anderson. They said it occurred in December of 2003. Mr. Anderson and Mr. Goddard's testimony, and Mr. Goddard's testimony was undisputed. It was their testimony that there was no need to conduct any investigation and speak to other witnesses in December. They had the video. They met with Ms. Wing, and they got Mr. Contreras to leave the store. So two of the people did testify to meeting with Mr. Anderson, but thought it was sometime later. His testimony, Mr. Anderson's testimony that he met with Ms. Bracho, the woman whom Ms. Wing alleged didn't speak English, but again, there was no proof of that, and there was one other individual, Mr. Pierce. But wait, wait, wait. There may not have been any proof of that, quote, unquote, but isn't that the jury's to determine whether she was telling the truth about that? Mr. Anderson's testimony that he did meet with her and another gentleman, Mr. Pierce,  The EEOC failed to present it. But they testified to that, but it's disputed by what she said. No. Ms. Wing said she did not know who, if anyone, Mr. Anderson met with. What she testified is she couldn't identify any witnesses to the harassment. So Mr. Anderson's testimony that he met with Justin Pierce and Reza Bracho is undisputed. The EEOC didn't introduce any evidence to contradict that. And the other two individuals, Mr. Barajas and Ms. Gomez, said they did meet with him but placed it later in time. Ms. Tess, could you address the EEOC's cross-claim on the jury instruction issue? Yes, Your Honor. It's our position, first of all, that the EEOC has waived that objection by not timely making the objection during the jury charge conferences. There were two of them. And the EEOC was asked, you know, what are you alleging? What have you said in the complaint? What have you said in the pretrial order? And the EEOC admitted all they had ever asked was, or all that they had ever stated, is the materially adverse action was a withdrawal of a promotion, which the district court correctly realized is very different than a materially adverse action of a failure to promote claim. Well, and as I understand the record, they had also participated in the drafting of the pretrial order, which excludes that theory of recovery or liability. Is that right? Yes, Your Honor. And not only just one place in the pretrial order, I mean, it goes back, you know, the charge, in Ms. Williams' charge, she said she was demoted. In the complaint, the EEOC, who framed the complaint, said she was forced to, subject to a withdrawal of a promotion. And in the pretrial order, we had to agree on the nature of the action in one part of it. And the parties agreed that the nature, the materially adverse action to support the retaliation claim was a withdrawing of the promotion. And then in the EEOC, when they had to frame their own contention, the EEOC contended that AutoZone retaliated against her by withdrawing her promotion. So it's our position with that, Your Honor, that the district court's decision was correct. And I'm going to save the rest of my time if I could. Thank you. All right. Very well. You may do that. Judge Thompson. I would like to ask you, it seems to me on this withdrawal or denial that there was the use of the word withdrawal in the complaint. Then at one time when you were discussing one of the orders, denial came into it, and the word as an issue in the case was denial. Then a case is tried to the jury. And I think it's in the final conference between the lawyers and the trial judge as to what the jury instructions are going to say. And I think the counsel for the EEOC says, well, withdrawal or denial, it's the same thing or something like that. The AutoZone lawyer says, no, withdrawal was used in the complaint. That's how we prepared this case. That's how the jury should be instructed. And then the EEOC says, well, we've made our position known or we stand on our position or whatever it was. And then the district judge says, okay, and then he uses the instruction, withdraw. Now, that's the way it went down right at the end. Is that correct? It is correct. It is correct, Your Honor. The EEOC did not object. The district court properly kept the focus on what was in the complaint, what is in the pretrial order, what has the EEOC said the scope of this litigation is from the very inception. And so the district court properly held them to define that scope. And it was our position that, and the district court correctly agreed, that a denial is like a failure to promote. A withdrawal is like a demotion. Well, yeah. We know the difference between withdrawal and denial. And the district judge used the term withdrawal. Because that was what was in the complaint and he wanted to see if there was a difference. And I think he probably knew the difference, too. Yes, Your Honor. But I don't know. We'll have to hear from you. Yes. That both the withdrawal and a demotion imply that Ms. Wing had had the position and it was taken away, and that she testified that she had never had it and didn't even know what a PSM did. Thank you, Your Honor.  We'll hear from the commission. May it please the Court. My name is Paula Brunner and I'm representing the EEOC. Appellee and cross-appellant in this case. Starting off with the affirmative defense, on the affirmative defense claim, AutoZone must prove that the evidence permits only one reasonable conclusion, and that that conclusion is contrary to this jury's verdict. AutoZone cannot meet that standard, Your Honors. Viewing the evidence in light most favorable to the EEOC and not reweighing the evidence or reassessing the credibility of the witnesses. You're talking about the sexual harassment claim. Is that what you're talking about? The affirmative defense claim, Your Honor. The affirmative defense meaning that they had a proper policy and that it was appropriately ---- The affirmative defense meaning the two prongs requiring that they exercise reasonable care  availed herself of the grievance procedure complaint mechanism. And since AutoZone has devoted a lot of time to identifying facts that the jury heard and obviously chose not to believe on the first prong, I'd like to just focus on the facts. The jury then returned the verdict of $15,000 for ---- Compensatory. Compensatory and $50,000 in punitive. Punitive damages. That's the claim you're talking about. No, you're not. I'm not on punitive damages right now. I'm on just the affirmative defense to the sexual harassment claim. But there is some overlap with respect to the punitive damages on the first prong. So your position is they obviously rejected the affirmative defense because they awarded $15,000 in damages to her, correct? No, that's not actually my position, Your Honor. If you would allow me, I mean, yes, I am saying that there is potential overlap. I'd like to make clear first that since they are challenging the affirmative defense finding first to the sexual harassment claim, that there is undisputed evidence that Ms. Wing complained in accordance with the complaint policy and AutoZone's inability to undercut that finding because of the undisputed evidence in the record automatically requires this court to affirm the finding on affirmative defense. As to the punitive damages. Let's take it one step at a time. Was there a special verdict form here? There was a special verdict. It was a denominated special verdict because of the damages questions. Okay. But was there any specific question, an interrogatory pose to the jury on whether or not the affirmative defense had been established? No, Your Honor, there was not. And it wasn't necessary because it was in the jury instructions to which AutoZone had not objected. And the law established that if in fact the jury instructions cover all the elements of the claims and their defenses and it is in accordance with the law and there's no objections, that is sufficient. Let me take you back to the question I asked you earlier, and that is that then mustn't we presume that because the jury found liability and awarded damages that it rejected the employer's affirmative defense? Absolutely. Okay. All right. Yes, Your Honor. That is absolutely correct, and I apologize for not responding correctly the first time. That is absolutely correct. Sometimes judges ask softball questions. Yes, you do, and I absolutely appreciate it when you do. The audience, count to five before you answer. Yes, sir. And so in light of the softball question I received, I'd like to move on to the cross-appeal issue. That is okay unless you have additional questions. Okay. Okay. On the cross-appeal, we do maintain that district court abuses discretion in the formulation of the retaliation instruction as it pertained to the adverse act. At the summary judgment stage, Your Honor, we had, Your Honors, we had informed the court very thoroughly that we were bringing more than one retaliatory act to supplement or adverse act to supplement the retaliation theory. But most importantly with respect to this appeal, we did frame evidence that supports a denial of a promotion claim. That first being you leave it out of the pretrial order. I have to tell you, counsel, I'm a rules guy, and I understand the purpose of the pretrial order, and I think our case law in the Ninth Circuit recognizes it as well, that once that pretrial order is entered, the purpose is to refocus the parties on what really needs to be tried. And all of the prior pleadings pass out of the case. And if the EEOC wanted to pursue an alternative theory of denial of promotion, all it had to do was to tell the district court at the pretrial order stage, we want that included in the pretrial order. And I'm sure Judge McNamee would have included it. You're correct, Your Honor. And having not been trial counsel at that time, I can only surmise that it was an oversight in not framing it. Yes, we did. As you note in the complaint, we did mention the withdrawal of the promotion claim as being one of the discrete adverse acts, although we said included but not limited to. And while we did omit it from the pretrial order, Your Honor, I think we did an excellent job of resurrecting that claim when we certainly included it in our summary of the case before the jury, and more importantly, when we included it in our proposed jury instructions, at which time ---- Did the EEOC expressly accept to the district court's formulation of the jury instruction when it rejected the proposed jury instruction? Our case law says that you have to do that, too, in order to preserve the issue for appeal. Your Honor, we did in our proposed jury instructions identify the claim, and also in objection to Autozone's framing of the jury ---- their proposed jury question. So is your answer to my question, well, we didn't say it expressly, but it's a fair inference that the district court should have seen that when we proposed a broader jury instruction, even though we didn't object, when he finally settled the jury instructions, that's enough to preserve it? Well, Your Honor, it's enough to preserve it, because under Rule 51, when we did present it at the initial proposed jury instructions, and the court ruled against us at that time and limited it to withdrawal or promotion, we ---- the rules say that we have basically received a ruling on that issue, and would not be required to resurrect it. But we did. We did continue to do so. And it's apparent from ---- I'm sorry. Go ahead. It's apparent from the fact that the jury instructions that the court kept presenting to the parties contained the denial of jury ---- I'm sorry, the denial of promotion claim, which from that could be understood that the court actually got there's more than one claim before the jury, that there's not just the withdrawal promotion. And that's evidenced by the fact that at each stage, AutoZone was the one that had to object, because the draft jury instructions that the parties were given always complain, up until the final jury conference, always contained the denial of promotion claim. There was never a motion made to amend the pretrial order, was there, by EEOC trial counsel? There was a motion to amend, but not that portion of the pretrial order. But as I said, in Rule 51C, the court, the federal rules had basically said we had presented our claim on the record to the jury, and apprised the jury, I mean the court, of the claims that we wanted to present to the jury. More importantly, the court allowed in evidence that supported that claim. And unlike the withdrawal promotion claim, does not require that she had to have received the promotion. In other words, the actual direct denial claim rested on direct evidence, testimony that she said they ---- three managers told her she would not receive the promotion, because she had complained. Not because she wasn't qualified, not because she hadn't received the promotion, but because she had complained. And given that evidence in the record, had the jury received the denial of promotion claim in its jury instruction, the outcome might have been different, which is why we feel that the instruction was misleading and prejudicial. Why didn't trial counsel say that to the district judge at a time when the district court could have corrected the problem by simply amending the jury instruction? That's the whole problem I have with the commission's position. It looks to me like your trial counsel didn't do his or her job. Your Honor, I think that, again, because the rules, the law basically says when it becomes futile to keep pressing your position, and the judge has ruled, and in this case the judge ruled three times. What's futile if you never asked the court to? We did. In our proposed jury instructions, we did ask for the denial of promotion claim. And we did not ask for the denial of the jury instruction. So I think that's the whole problem. Counsel, you've tried cases, I assume. No, Your Honor. No, you never have. Okay. Well, then I won't. I guess I won't ask my question. But as somebody who has not tried very many cases, let me ask you this question. At the end of the discussions concerning the jury instructions, my notes show that the court then said, quote, I have a request for the instruction that you're asking for now. And that is true, Your Honor. And our response was we believe we preserved our position. So that it was brought to the judge's attention. Absolutely, Your Honor. Each stage of the process on the jury instructions, they were preliminary, intermediary, and final jury instructions. I'm not confused anymore. Yes, Your Honor. And so we felt that it was before the court, the court adequately was informed, and that the jury might have ruled differently and might have awarded even greater punitive damages, had the appropriate instruction been given to them. If there are no further questions. Why does it only go to punitive damages? Because we believe that a lot of the retaliatory conduct spoke to what the employer did. And because punitive damages speaks to the employer's conduct, not the victim's reaction as compensatory do, that we believe it might have led to a larger punitive damages award. No further questions? Thank you very much. Ms. Chess, I think you have a little more than three minutes left. First, Your Honor, I do have to correct Ms. Bruner, even though I know it probably hurts my position, but there was a special verdict form for the affirmative defense, and the jury rejected that we establish that. Okay. Okay. So in order to assess then your position, we have to decide that no reasonable jury on the basis of the evidence that is at trial could have rejected the affirmative defense as it expressly did. Yes, Your Honor. That's a tough standard. Yes, Your Honor. But we believe under the case law that we've cited in our briefs and the undisputed facts that Mr. Anderson met with her. He met with the harasser. But he met with her in a semi-public place where everybody at the store could see that the HR guy was here talking to her. Then he had a conversation as he was leaving with her in front of Mr. Cotreras, I guess, because he wanted her to see that he was specifically telling Mr. Cotreras, you know, leave the plaintiff alone. But, you know, the interviews could have been conducted off-site. He could have had that conversation with Cotreras without having her there. There was no doubt in anybody's mind when they walked out of there that everybody in the store knew that she filed a complaint against him. You're saying that even in the face of all that, no reasonable jury could have determined that that was a proper and prompt method of enforcing their no harassment rule? I don't think that there's any dispute it was prompt. As far as it being proper, Ms. Wing offered her speculation that other people had observed what was going on in the store. She didn't mention by name or bring any witnesses to say that they observed. And she didn't actually say that she saw people around when she was speaking with Mr. Anderson. But everybody obviously knew if three managers later told her that, you know, we know you complained. Each of those managers denied it. I mean, that was a factual issue for the jury. There was no manager that admitted that. And the fact that Ms. Wing did not complain, you know, she delayed in the first instance to complain. She never complained again. And upon the company receiving corroborating evidence of what seemed to be an objectively offensive act, removed him. We think that based on those facts, it's enough under Holly D. In the case law to show that the company met its burden to prove the first part of the affirmative defense. Do you agree that the request for instruction was that the other issue was brought to the attention of the trial court before the jury was instructed? Absolutely not, Your Honor. The judge kept asking the EEOC. What then is your interpretation of the language I read? Other than that objection, are there any other objections? To any other instructions besides the one that we had just gone over? Which was which one? The one talking about the retaliation instruction. Because we still had at that point – I was trial counsel. We still had punitive damages instructions and other instructions that followed. And there were no further objections to that. So I think, you know, Rule 51 does require an objection be made. And again, the judge properly focused the attention on the complaint and the pretrial order for Ms. Bruner to say an oversight. Well, it was in two places. The EEOC agreed with Autozone in the first section, and then when the EEOC had to identify their own contentions, they did so by saying the retaliatory action was an alleged withdrawal of promotion. I think my time is up. It is. Thank you very much. The case just argued is submitted. That concludes our calendar for the day. Thank you, counsel, for the arguments. We'll be adjourned until tomorrow morning. All rise. This court is adjourned.
judges: Thompson, Tallman, Cjj Tarnow (E. Michigan), Dj